May it please the Court. My name is Wayne Silver. I represent the appellants in this case, Linda Schau and the law officers, Wayne Schau. I'd like to reserve two minutes for rebuttal. Good day. The central issue in this case on appeal concerns the inherent authority of a bankruptcy court. Could you keep your voice up and please speak into the microphone? Thank you. The central issue in this case concerns the inherent authority of the bankruptcy court under Section 105A in the context of sanctioning an attorney for conduct that was committed or done outside of the bankruptcy court in another court. The appellants are asking this Court to reverse the bankruptcy court's April 17, 2007 order after remand, which imposed sanctions of 26,663 on the appellants under the bankruptcy court. Question A, which I'd like you to address, is the issue that you're trying to raise properly before us at this point. I'm sorry, Your Honor. Is the issue that you are raising, the central issue, properly before us at this time, or was it already determined in the earlier appeal? Yes, Your Honor. I do not believe it was determined in the earlier appeal. I believe the first appeal to the back that you're referring to resulted in an order that was interlocutory. I believe that for several reasons. First, the order remanding back to the bankruptcy court required the bankruptcy court to make explicit findings, new findings, of whether or not sanctions were to be imposed, and gave the bankruptcy court the opportunity to impose no sanctions. When the bankruptcy appellate panel in the first appeal sent the matter back to the bankruptcy court, the status of bad faith, as I read the order, was that it was reversed. The finding was reversed. And the way it came back, bad faith in the original bankruptcy court decision was based on a pillar and a stool. The pillar was a violation of the Barton doctrine. That was clearly reversed. Nobody takes issue with that. The stool was a three-legged stool for the other side. The first leg was that the appellants defended their actions, and the bankruptcy court took issue with that. That was reversed. The second leg was that they engaged in delaying tactics. That was reversed. The only thing that was left of this three-legged stool was one leg, which was an improper litigation tactic which consisted of a subpoena issued in a State court case directed toward the attorney for the bankruptcy trustee seeking deposition testimony and documents. That was what the bankruptcy court got back from the bankruptcy appellate panel. The bankruptcy court could have done a number of things. The bankruptcy court could have said, I don't believe that's bad faith. Well, he always said he thought it was, but he could say he – I suppose he could say, well, I don't think it's independently bad faith. Yes, Your Honor. It was part of the larger picture. Exactly. He could have said there's only one leg left in that bad faith stool. If I sit on it, I'm going to fall down. It's not going to support the bad faith finding necessary under 105a. Exactly. That was my position. But suppose we thought you were right about the procedural issue. Wouldn't we have to remand to the district court now to make a bad faith finding? I understand this case has gone on forever, but how can we do that? I was afraid you were going to say that. I think, Your Honor, that you could actually, under the facts of this case, decide as a matter of law that because it concerned conduct outside of the four walls of the court, that it could not be bad faith, because it was – and I'm well aware of the – and I'm going to pronounce this, I'm going to butcher this, but I think it's called the Uloa decision from the Ninth Circuit, which did hold that inherent authority of a district court did encompass conduct that took place outside of those four walls. I said in the briefs that I respectfully think that was wrongly decided because of a misreading of Chambers v. Nascau. And, again, it was a district court which has 28 U.S.C. 1927 authority, which we know under DeVille a bankruptcy court does not. And so procedurally, I do think that the issue was squarely put back in front of the bankruptcy court judge, who really didn't address the issue at all. The bankruptcy court judge acted as if it came back with a finding of bad faith sufficient to award sanctions and merely recalculated the sanctions, making very few actual findings, except going back and looking at some time entries. And I don't think that's what the Bankruptcy Appellate Panel in the first appeal had in mind. So, yes, I do think the issue was before you. Kagan. First, the Bankruptcy Appellate Panel, a different one in the second appeal, said it was what it had in mind. The second appellate panel couldn't have disagreed with me more. I guess I'm not let me, I'm not understanding the three-legged stool argument, I guess. The BAP in the first appeal said that the bankruptcy court was wrong in saying that there was a violation of the Barton Doctrine. It was wrong in finding that there was bad faith in DeLay. That it was correct that there was an improper litigation tactic, and therefore, since the amount of the sanctions were based on all of those things, and two of them were incorrect, the amount of the sanctions had to be recalculated. Do you disagree with that? Yes, Judge Sotomayor, I do. I disagree with that because if you look at what I would call the holding of that opinion that you have in your hand there, it says that the bad faith was unequivocally reversed. And also, did they ever specifically say that the remaining grant was okay, or they just didn't say anything about it? Well, that was the ambiguity in the first BAP order that, frankly, drove me crazy. I didn't know what to do with it. I looked at it and tried to harmonize. Are we looking at the same order? I'm looking at the last paragraph on what they were doing and looking at the mandate of the BAP. If I remember correctly, Your Honor, the memorandum of decision on the last page says that the finding of bad faith is all-caps reversed, and that is either in the mandate or in the memorandum of decision. But it was definitely there. And when I have my opportunity, when Appelli addresses the Court of Appeal to me, I'll say it. It's on page 19 of the memorandum of decision. And it says, Based on the foregoing, we find as follows, 1, 2, and 3, as the bankruptcy court's finding that Appellant's accident, bad faith, is reversed. Yes, Judge Roth. And that's what the order could be read a couple of different ways. And really, I had trouble harmonizing that, because the order could be read a couple of different ways. Now, that means it was wrong, doesn't it. If you look above it, it says that, having determined in finding the Appellants engaged ñ having determined that the Court erred in finding that there was a violation of the Barton Doctrine and in finding that Appellants engaged in bad faith delay. So therefore, those findings were bad, but the one finding that supported the sanctions was okay. So now you have to recalculate the sanctions. So didn't you have to appeal that determination of the ñ that the sanctions were erroneously based on three stools rather than just on one? Three legs. Your Honor, I ñ Three legs of the stool. I'm sorry. It's an analogy that helps me. It doesn't seem to be helping me. I'm sorry. I didn't think so, because with the reversal of bad faith, as it came back, what I got out of that order was, yes, the Court found an improper litigation tactic by issuing this, you know, in the State court, but bad faith had been reversed, and therefore, it was sort of an ñ It's a bad faith delay, the bad faith delay tactic. But, again, Your Honor, if you read the ñ if you read the memorandum of decision that Judge Roth was looking at, it doesn't quantify ñ That's Judge Roth. I'm sorry. I knew that. It doesn't quantify or qualify the reversal. If it had said bad faith is reversed on this ground or that ground, it would have ñ I would have been in, and I have 36 seconds. And also, that memorandum specifically says that the delay, i.e., the continuances and so on, were not basis for bad faith. Yes, Your Honor. So ñ and it never actually says that anything was the basis for bad faith. Also true. Also true. I would like to resort by 15 seconds. Okay. We'll give you 30 seconds. Thank you, Your Honor. Linda Sorensen, Storm Simon Associates, for the trustee, Lois Brady. Your Honors, the two main theories that the trustee pursued in seeking 105 sanctions were based on the same set of facts. And the appellate court said one theory wasn't available, the other one is. Where does it say the other one is? Where does it say that? It says there was abuse of process. Where? In the first appeal. Yeah.  in improper litigation tactics. May I borrow counsel's ñ Is section 2, was that the one? The bankruptcy court did not err in finding that Xiao engaged in improper litigation tactics. That one? Yes. All right. That's it, I think. It's a finding that she ñ then the next heading is the bankruptcy court erred in finding that Xiao acted in bad faith. Your Honor ñ So is there any holding that she engaged in bad faith by engaging in improper litigation tactics? If we can back up a little bit. The ninth ñ What's the answer to my question? Yes, there is, Your Honor. Where? If I may refer to my own brief. No, don't refer to the brief. Refer to the orders that we're trying to look at. The memorandum opinion. I don't remember. Now, if you're coming here to argue about the effect of an order, it'd be nice if you knew what was in the order. I'm sorry, Your Honor. Your Honor, page 16, which Judge Berzon has just been referring to, discusses the improper litigation tactics, and then, of course, page 17 goes on to ñ But any improper litigation tactic isn't bad faith, is it? Yes, it is. Abusive process is bad faith. Where does that say ñ Section 105 of the Bankruptcy Code talks about abusive process specifically. It doesn't say that abusive process, but only if the abusive process is found to be bad faith. The trustee argues that the facts show bad faith, and the trustee relies on the recent Ninth Circuit decision by another panel in the lieutenant case that we supplemented the record with about 10 days ago, showing that this circuit does not consider the magic words, bad faith, to be necessary if the evidence supports the characterization of the behavior as being bad faith behavior. In other words, the stool analogy is not correct. The behavior is the same. The behavior in violating the integrity of the bankruptcy court by chasing the expense to a bankruptcy estate is offensive to a bankruptcy court, and the court has the jurisdiction under Section 105 to address that and to maintain its own integrity and to reimburse the estate for the cost that has been caused. So we don't need the magic words in this particular paragraph of the first BAP opinion because we have the behavior being stated to be improper and abusive. And we can look at the behavior and we can say, yeah, it's the same behavior as under the Barton Doctrine, so there's not three separate legs of this stool. The bankruptcy court didn't say, you lose because you made a technical violation of the Barton Doctrine. Instead, the bankruptcy court went right to the merits of this matter, is that you are investigating a bankruptcy estate by harassing and expensive techniques, plus you persisted on appeal. The argument is made, she made a simple mistake. She should have done it in the bankruptcy court. Well, she didn't take that position in the bankruptcy court. She didn't say, I made a simple mistake. She did it once before. She issued a subpoena to try to look at the estate's books and records. No one sued her for it. Instead, they gave her the estate's books and records so she could see it. Then when she wanted to basically extort the bankruptcy administration into fighting her enemies for her by seeking to examine the fees of counsel that she was litigating against, she tried again to cause expense, to cause a breakdown in the ability of a lawyer to practice. But we're not talking about a personal dispute here between Radun Stromsheim and her law practice and Ms. Schau. We're talking about the bankruptcy court using its inherent authority. Your Honor? Well, I guess I don't understand. I thought your principal position was that if there was any problem with the backs saying that their sanctions are appropriate under this theory, before the bankruptcy case, that it should have been appealed back when the abac decided the case in the first place. That is the trustee's initial position, Your Honor. But knowing the courts don't want technically to ignore merits, the trustee addresses the merits as well. But certainly, if somebody --- Now, if we lack appellate jurisdiction, then we don't then ---- Yes, that's right, Your Honor. All of these arguments about this was an ambiguous order, are we taking votes here? Certainly, the bankruptcy appellate panel and the second appeal ---- It certainly was at least an ambiguous order. I mean, it says the bankruptcy court's finding that the appellant's acting in bad faith is capitalized reversed. And when it's remands for the sanctions, it says the appropriate amount of sanctions, if any, suggesting it could be zero. So how can we ---- I mean, maybe you can read the whole thing the way you're saying it, but we're certainly not compelled to read it. You do read it the way that I'm saying. And you ask yourself who won and who lost. Well, if the bad faith finding is reversed, where's the bad faith finding if there isn't a second one? The bad faith finding was reversed. So don't we need another one? The bad faith finding regarding the delay tactics was reversed. No, it doesn't say that. The Barton doctrine was reversed. It doesn't say that. You have to read it in context, and the context is that there's a ---- there were delay tactics, and the shorthand version of saying there were delay tactics is what it ends up with. I mean, isn't it possible that a bankruptcy judge, especially because the Barton issue and this abuse of process issue were fairly tied up together, and in other words, the problem was that they didn't ask ---- that they went off to the state court, that she went off to the state court to depose this person without asking the bankruptcy judge. And you could divide it into pieces, but it was one set of events, and the bankruptcy judge certainly could have come to the conclusion if he'd addressed the question that, well, I thought there were all these other grounds. And leaving this one alone, I don't think it supports sanctions. Would that be an incoherent conclusion? It would be incoherent in the facts of this case. If someone was deposing the trustee's attorney because of the trustee's attorney's knowledge of facts material to a dispute in state court, someone could raise the Barton doctrine but be overruled on that. But here, since it was an investigation of the bankruptcy estate having nothing to do with the state court action, you look at the basis and you say, well, actually it was who won. The one that ---- the person that won was the bankruptcy trustee and the bankruptcy court because the abuse of process was found to be sanctionable behavior. Yeah. I take it you want us to read the paragraph with the mandate in the context of the last paragraph of the opinion that summarizes what it means. Yes. Thank you. Thank you. Roberts, in the brief time left, I just want to point something out. The words abuse of process in 105 do not mean abuse of process anywhere in the world. Abuse of process in 105 has to mean abuse of bankruptcy court process. And when you consider my client's conduct, look at the other cases under 105. Look at the conduct that was worthy of exercising this awesome inherent power in Deville, in Dyack, in Laheed, I believe, where it was egregious violations of bankruptcy court procedures and frauds on the bankruptcy court, as opposed to what my client did, which was issue a subpoena, otherwise lawful, she was entitled to inspect the records, she just issued it in the Santa Clara Superior Court. That was her mistake. When you put that in the context of all of the other cases where the Court exercised its inherent authority, it pales. It's such a minor thing compared to hijacking an apartment house or fraud on the court or lying to the court. I'm out of time, Your Honor. Thank you. Thank you. Mr. Sparghett is submitted for decision.
judges: Schroeder, Berzon, Roth